(61 Misc. Rep. 1.)

## In re PUTNEY.

(Surrogate's Court, Cattaraugus County. October, 1908.)

1. GUARDIAN AND WARD (§ 30*)—ACCOUNTING AND SETTLEMENT—CREDITS.

On judicial settlement of a guardian's account, the Surrogate's Court has authority to make an allowance for advances made for the support and maintenance of the ward, though no order permitting such expenditure has been procured from the Surrogate's Court before making the same.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 128, 130; Dec. Dig. § 30.*]

2. PARENT AND CHILD (§ 3*)—OBLIGATION TO MAINTAIN CHILD.

The obligation of maintaining a child rests primarily upon the parent; and this obligation includes the education of the child to an extent consistent with the station in life of the parties.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. § 33; Dec. Dig. § 3.*]

3. GUARDIAN AND WARD (§ 30*)—ACCOUNTING AND SETTLEMENT.

An infant, on his mother's death, was taken to his grandmother's home and cared for by her without expense to his father until three years old. In the meantime his father had remarried, and the son was returned to his home, and from that time on supported in a manner usual with people in their station of life. The father, when his son was four years old, was appointed as his guardian, and received his entire estate, amounting to something less than $600. The father had the ability to at least contribute to some extent toward the support of his son, and in none of the annual accounts filed by him did he make any charge of expense incurred for his son's support. On judicial settlement of his accounts, the father presented charges against the son for an amount of more than his entire estate. *Held*, that the father, as guardian, should not be permitted to absorb the entire estate, but should be required to pay over to his son $200.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 116-122; Dec. Dig. § 30.*]

Proceedings for the judicial settlement of the account of Edwin O. Putney, as guardian of the person and estate of his infant son, Levi E. Putney. Account settled.

Charles E. Congdon, for petitioner.
Henry P. Nevins, for contestant.

DAVIE, S. Edwin O. Putney was appointed guardian of the person and estate of his infant son, Levi E. Putney, on the 30th day of September, 1891. The petition alleges that the total estate of said infant, consisting of personal property, did not exceed in value the sum of $700. The infant at that time was of the age of four years; his mother having died in the month of August, 1887.

It appears from the evidence in the case that after the appointment of the petitioner as guardian, as aforesaid, and about the year 1893, he received the sum of $570.88, constituting the entire estate of said minor. No other funds came into the hands of the guardian belonging to said estate. It does not appear that any application was ever made by the guardian to the Surrogate's Court for permission to use any portion of the principal of said estate for the support and main-

tenance of said minor. It does appear, however, that within a com-
paratively short time after the receipt of the moneys belonging to this
estate the guardian applied the same in liquidation of his own indebt-
edness and for his own individual benefit. No annual report appears
to have been filed by the guardian pursuant to the requirements of
section 2842 of the Code of Civil Procedure, prior to the year 1892.
On the 9th day of January, 1893, he did file in the office of the sur-
rogate a report of his proceedings as such guardian for the year 1892,
in which he states that he had received since his appointment the sum
of $150, and that the same then remained in his hands. On the 12th
day of January, 1894, he filed his report for the preceding year, in
which he states that he had received $1,026.88, that he had loaned
upon a note $170 thereof, and that the balance then remained in his
hands. On the 6th day of February, 1895, he filed a report for the
year 1894, in which he states that he had received $1,026.88; that he
had loaned $170, as above stated, and that the balance thereof still
remained in his hands; and in the year 1896 he filed a further report,
bearing date and verified on the 29th day of January, 1896, in which
the guardian states that he had received the sum above named, to wit,
$1,026.88, and that he had loaned said sum of $170, and also charged
himself with interest on such note to the extent of $8, but not stating
in the last-mentioned account that he still retained the funds in his
possession. No accounts subsequent to the one last referred to have
ever been filed by the guardian, and in none of the accounts filed by
him has he reported or made any charge of any expenses or disburse-
ments incurred for the support of the minor. It appears from the evi-
dence that in the annual reports filed by the guardian he charges him-
self with sums in excess of the entire amount received; that the total
amount coming into his hands as such guardian belonging to the in-
fant was $570.88. In the account filed for judicial settlement the
guardian presents charges against the son for an amount which, if al-
lowed, will more than absorb the entire estate and to this portion of
the account objections are made; so that the only question raised upon
this contest is as to whether the guardian should be allowed the entire
funds of the estate or any portion thereof on account of expenses in-
curred by him in maintaining said minor.

There is no question of the authority of the Surrogate's Court to
make such allowances, if the facts disclosed by the evidence justify
the same. In the case of Hyland v. Baxter, 98 N. Y. 610, it was held
that a Surrogate's Court on judicial settlement had the authority and
jurisdiction to make an allowance on account of advancements which
had been made for the support and maintenance of a minor, although
no order permitting such expenditure had been procured from the
Surrogate's Court before making the same; and in that case it was
held that the question of such expenditures should then be disposed
of in the same manner and having in view the same facts and cir-
cumstances as if an application had been made. So in this case the
question is not one of power or authority, but one of ascertaining
what should be done under all the circumstances in the case in order

to reach an equitable disposition of the matter as between the guardian and his son.

As already stated, early in the administration of the estate, the guardian appropriated the entire funds of the estate, not to meeting the expenses of the support and maintenance of the infant, but for his own individual benefit and convenience; and it is by no means apparent that at the time of making and filing the annual accounts above referred to the guardian entertained any intention to charge the infant with the expenses of his support and maintenance. The transaction has to some extent the appearance of an effort on the part of the guardian at this late day to establish a defense against the claim of his son, when, in fact, no intention existed in the mind of the guardian to make such charge at the time of the making of any expenditures for the infant.

The infant has no other estate than that which has come into the hands of his guardian, as above stated. He is a young man who has recently become of age, of ordinary intelligence and apparently in fair state of health, and is undoubtedly able, and during several years last past has been able, to maintain himself, or at least to contribtue toward the expense of his maintenance. After the death of his mother the infant was taken to the home of the grandmother, where he was cared for by her, without expense to the guardian, until the infant became of the age of about three years. In the meantime the guardian had married again, and the infant was returned to the guardian's home, and from that time on supported and maintained in a manner usual and customary with people in their station of life. The guardian was a man of some means, having title to a farm in the town of Perrysburg of the value of about $3,000, and upon which there has existed for several years, and still exists, a mortgage incumbrance to the extent of $1,000. The guardian has also during several years last past derived an income to some considerable extent through his employment by a manufacturing corporation; so that, all things taken into consideration, it seems that the guardian had the financial ability to at least contribute to some extent toward the support and maintenance of his infant son. The obligation of maintaining a child rests primarily upon the parent, and this obligation includes that of education to an extent consistent with the station in life of the parties. Such was the obligation resting upon the petitioner at the time he received the moneys in question; and it becomes incumbent upon him to show affirmatively such a condition that the court, in the exercise of a reasonable discretion, can say, or should say, that the petitioner was unable to meet such obligation.

I am not satisfied from the evidence in the case that the guardian should be permitted to absorb this entire sum for his own benefit, notwithstanding the fact that he has incurred certain expenses in the maintenance and education of the minor; nor am I prepared to say, in view of the comparative situation of both the petitioner and his son, that the petitioner should now be required to account for the entire sum. I am of the opinion that, under all the circumstances, some allowance should be made from the principal of this estate to the peti-

tioner on account of such care and maintenance. The said guardian should be required to pay over to his son the sum of $200 on account of the moneys received by said guardian, as above set forth.

A decree to that effect will be entered. Decreed accordingly.